UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Dr. R.C. Samanta Roy Institute of Science and Technology, a Wisconsin non-stock corporation, and Midwest Oil of Minnesota, LLC, | Civil No. 05-735 (PAM/RLE) |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| The Star Tribune Company, f/k/a Cowles Media Company, d/b/a Star Tribune, | |
| Defendant. | |

_____

| | |
|---|---|
| Dr. R.C. Samanta Roy Institute of Science and Technology, a Wisconsin non-stock corporation, and Midwest Oil of Minnesota, LLC, and Naomi Isaacson, | Civil No. 05-736 (PAM/RLE) |
| Plaintiffs, | |
| v. | |
| Northwest Publications, Inc., d/b/a The Pioneer Press, | |
| Defendant. | |

_____

| | |
|---|---|
| Dr. R.C. Samanta Roy Institute of Science and Technology, a Wisconsin non-stock corporation, and Midwest Oil of Minnesota, LLC, | Civil No. 05-736 (PAM/RLE) |
| Plaintiffs, | |
| v. | |
| KSTP-TV, LLC, | |
| Defendant. | |

_____

Dr. R.C. Samanta Roy Institute of Science
and Technology, a Wisconsin non-stock
corporation, and Midwest Oil of Minnesota,
LLC,

Civil No. 05-743 (PAM/RLE)

Plaintiffs,

v.

Northwest Publications, Inc., d/b/a Duluth
News Tribune,

Defendant.

This matter is before the Court on Defendants' Motions to Dismiss. For the reasons that follow, the Motions are granted and the Amended Complaints are dismissed with prejudice.

**BACKGROUND**

**A.    Plaintiffs**

Dr. R.C. Samanta Roy ("Dr. Roy") is the President of the Board of Directors of Plaintiff Dr. R.C. Samanta Roy Institute of Science and Technology ("SIST"). Dr. Roy is of East Indian descent. Plaintiff Midwest Oil of Minnesota, LLC ("Midwest Oil"), is a wholly owned subsidiary of SIST. Naomi Isaacson is on the SIST Board of Directors and is an agent for both SIST and Midwest Oil. She is a named Plaintiff in the Amended Complaint against Defendant Northwest Publications, Inc., d/b/a The Pioneer Press ("Pioneer Press").

SIST owns several businesses, including several gas stations in Minnesota. In April 2005, SIST-owned gas stations received media attention regarding their gas prices. Statements

were made both in newspaper publications and television news broadcasts.

The Amended Complaints allege four causes of action against each Defendant: (1) 42 U.S.C. § 1981;[1] (2) defamation; (3) defamation of business; and (4) tortious interference with business expectancy. The Amended Complaint against Defendant Pioneer Press also includes claims for invasion of privacy under Minnesota law. The Amended Complaints seek damages in excess of $500 million against each Defendant.

**B.  Defendants**

   1.  Star Tribune

Plaintiffs allege that on April 9, 2005, Defendant The Star Tribune Company ("Star Tribune") published an article entitled "Rock-Bottom Gas Prices Probed." Plaintiffs claim that the article was discriminatory and defamatory because the article stated that: (1) Dr. Roy was formerly known as "Brother Rama Behera"; (2) Dr. Roy is a former "Hindu who for decades has preached a unique fusion of Christianity and Judaism that rejects mainstream religion"; and (3) Dr. Roy and his organization have "been a focus of gossip and speculation" for years, because it has bought nearly $5 million worth of property. Plaintiffs contend that other gas stations in the area also had low prices, but only their stations were mentioned.

Plaintiffs also allege that the Star Tribune published an article on May 1, 2005, entitled "Wisconsin Town Wonders What Silent Owner Wants." In this article, Plaintiffs contend that

---

[1] Plaintiffs' first Complaints assert claims under 42 U.S.C. § 1985. However, these claims were omitted in each of the Amended Complaints and are not addressed in any of Plaintiffs' responsive memoranda. Accordingly, the Court will not address Plaintiffs' § 1985 claims and presumes that Plaintiffs abandoned such claims.

discriminatory and defamatory statements were made because the Star Tribune identified SIST as a religious group without distinguishing between SIST and Dr. Roy.  Specifically, the article stated that: (1) Dr. Roy has "organized a small band of believers called the Disciples of the Lord Jesus"; (2) Dr. Roy is a native of India, who "came to the United States to study nuclear engineering and underwent a dramatic conversion one afternoon when he said Jesus spoke to him"; (3) Dr. Roy "and his lieutenants have said that they want to build a secular K-12 campus on undeveloped property"; (4) SIST has bought "dozens of properties" and spent "$6.4 million" in Shawano, Wisconsin; and (5) SIST "has also purchased gas stations in Anoka, St. Paul, Albert Lea and Oakdale."  Finally, Plaintiffs complain that the May 1 article is discriminatory and defamatory because it states that "the Samanta Roy group is delinquent in Shawano County for more than $33,000 in property taxes" and that an amusement park owned by the group "is being sued by a Green Bay firm for failing to pay a $79,000 bill."

2. KSTP-TV

Plaintiffs allege that on April 5, 2005, Defendant KSTP-TV, LLC ("KSTP-TV")[2] aired a broadcast that contained defamatory and discriminatory statements.  These statements included: (1) "it is a gas station that may be linked to a religious organization"; (2) "They eventually changed their sign to $2.11, but never changed the price at the pump"; and (3) the Exxon store is owned by "a woman that records link to a religious group," which has been

---

[2] Plaintiffs originally filed suit against Hubbard Broadcasting, Inc. ("Hubbard"). However, the parties appear to concede that KSTP-TV, a subsidiary of Hubbard, is the real party in interest.  Accordingly, pursuant to Fed. R. Civ. P. 21, the Court substitutes KSTP-TV for Hubbard as the proper Defendant.  The caption reflects this change.

investigated for claims of "child abuse."

    3.    <u>Northwest Publications, d/b/a The Pioneer Press</u>

Plaintiffs assert that Defendant Northwest Publications, d/b/a The Pioneer Press ("Pioneer Press"), also published an article on April 8, 2005, entitled "Gas Price Fuels Anger in Rivals." Plaintiffs contend that the article was defamatory and discriminatory because it stated that: (1) "one station might be dipping below" minimum gas prices; (2) the station's owners "are affiliated with a Wisconsin based religious group, is selling at a loss, possibly in violation of state law"; (3) SIST "keeps a low profile but has been described in news reports as a religion that embraces parts of Christianity and Judaism"; (4) "Shawano County District Attorney Gary Robert Bruno is familiar with [SIST]"; (5) "there have been allegations for years that things are going on"; and (6) "Anoka County station owners say the group is hurting them."

Plaintiff Naomi Isaacson further alleges that the Pioneer Press intruded upon her seclusion and published private facts, in violation of Minnesota law. Specifically, she contends that the Pioneer Press disclosed that she works for a Hennepin County Judge, that she has a listed Minneapolis address, and that she signed a mortgage document with Anoka County.

    4.    <u>Northwest Publications, d/b/a Duluth New Tribune</u>

Plaintiffs claim that Defendant Northwest Publications, d/b/a Duluth News Tribune ("Duluth News"), published an article on April 10, 2005, entitled "Gas Below Minimum Price Draws Inquiry." Plaintiffs claim that the article is defamatory and discriminatory because it stated that: (1) the gas station dropped the price "four cents below the legal minimum price of $2.05"; (2) Dr. Roy, is "a former Hindu who preached a unique fusion of Christianity and

5

Judaism that rejects mainstream religion"; and (3) SIST mistreated its members.

**DISCUSSION**

**A.     Standard of Review**

For the purposes of these Motions to Dismiss, the Court takes all facts alleged in the Amended Complaints as true. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court must construe the allegations in the Amended Complaints and reasonable inferences arising from the allegations favorably to Plaintiffs. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). A motion to dismiss will be granted only if "it appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief." Id.; see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**B.     42 U.S.C. § 1981**

Plaintiffs claim that all Defendants "interfere with the business contracts and business affairs of Plaintiffs by impairing their right to make contracts with the consuming public," and that such interference "is motivated by the racially and ethnically distinct background of Dr. Roy." Plaintiffs contend that any statement made by any of the Defendants that reference Dr. Roy's "Hindu" background or his ethnic name "Rama Behera" reveal a race-based animus.

42 U.S.C. § 1981 prohibits racial discrimination in the making and enforcement of private contracts. See Runyon v. McCrary, 427 U.S. 160, 168 (1976). To establish a prima facie case under § 1981, a plaintiff must demonstrate that: (1) he or she is a member of a protected class; (2) the defendant intended to discriminate; and (3) the discrimination interfered with a protected activity as defined in § 1981. See Bediako v. Stein Mart, Inc., 354

F.3d 835, 839 (8th Cir. 2004). All persons have the right to "make and enforce contracts" and the right to the "enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981.

Plaintiffs allege that they have been subjected to negative media coverage in the past. Plaintiffs complain that Dr. Roy and his followers have been historically subjected to negative media coverage, and how that coverage caused "severe and ongoing oppression from the general public." Based on these past events, Plaintiffs claim that each of Defendants' current activities were motivated by discriminatory animus. Specifically, the Amended Complaints allege that each Defendant "did and continues to interfere with the business contracts and business affairs of Plaintiffs by impairing its right to make contracts with the consuming public."

Plaintiffs are claiming that Defendants have interfered with Plaintiffs' ability to contract with third parties – that is, the statements made by Defendants have allegedly made Plaintiffs' business less desirable, and therefore Plaintiffs have suffered damages. However, this is not what § 1981 is designed to protect. In Phelps v. Wichita Eagle-Beacon, the Tenth Circuit affirmed the district court's dismissal of the plaintiff's § 1981 claim, which was based on a theory similar to that advanced by Plaintiffs in this case. In particular, the plaintiff claimed that the defendant newspaper, which published two articles about the plaintiff, conspired to publish false articles about him based on his race, which allegedly resulted in the loss of clients. The Tenth Circuit dismissed the claim, and stated:

> Plaintiff has alleged that defendants' actions have interfered with his prospective

7

business opportunities [], but we find that vague and conclusory allegation insufficient to state a deprivation of the right to make and enforce contracts that is protected by Section 1981. Plaintiff has the same right as others to enter into contracts with those who wish to contract with him. Even if the state has defamed him and thus arguably made him less attractive to some who otherwise might want to contract with him, the defamation does not deny him the basis *right* to contract.

886 F.2d 1262, 1267 (10th Cir. 1989) (emphasis in original) (internal quotations omitted). Plaintiffs' allegations parallel the allegations of the plaintiff in Phelps. This Court is persuaded by the reasoning of the Phelps court, and finds that Defendants' statements do not impede or obstruct against Plaintiffs' right to contract. Thus, Plaintiffs' § 1981 claims are dismissed.[3]

**C.    Defamation**

In Counts III and IV of each Amended Complaint, Plaintiffs claim that each Defendants' statements constitute defamation. Defamation requires Plaintiffs to plead that (1) a false and defamatory statement was made about the plaintiff; (2) the statement was made to a third party;

---

[3] Moreover, the Court questions Plaintiffs' ability to pursue a § 1981 claim, since Plaintiffs are corporations rather than individuals. In D.B. Indy, LLC v. Talisman Brookdale, LLC, the Court dismissed the corporate plaintiff's § 1981 claim for lack of standing. File No. 04-1023, 2004 WL 1630976, at *3-4 (D. Minn. July 20, 2004) (Magnuson, J.). Plaintiffs claim that Dr. Roy and the corporate Plaintiffs are "indistinguishable," and therefore the corporate Plaintiffs have standing to pursue this § 1981 claim. However, the Amended Complaints do not allege that Dr. Roy's "legal and economic interests overlap" with those of the corporate Plaintiffs, or that the corporate Plaintiffs were the direct target of the discrimination. See NDN Drywall v. Custom Drywall, Inc., File No. 04-4706, 2005 WL 1324056 (D. Minn. May 4, 2005) (Nelson, Mag. J.). Furthermore, the allegations of discrimination fail to assert that Defendants intended to discriminate on the base of race. Although Plaintiffs complain of prior negative media coverage as it pertains to Dr. Roy and his organization, these allegations alone do not claim that Defendants intended to discriminate against the named Plaintiffs.

and (3) the statement tends to harm the plaintiff's reputation. See Weinberger v. Maplewood Review, 668 N.W.2d 667, 673 (Minn. 2003). Generally, expressions of opinion are not considered defamatory. See Milkovich v. Lorain Journal Co., 497 U.S. 1, 13-14 (1990). Plaintiffs contend that they are public figures, and therefore concede that they must also prove that Defendants made the allegedly defamatory statements with malice or reckless disregard for the truth. New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964). Thus, Plaintiffs must show that Defendants published the statements with "an awareness of its probable falsity, or with serious doubts as to their truth." Stead-Bowers v. Langley, 636 N.W.2d 334, 342 (Minn. Ct. App. 2001) (internal citation omitted). On these Motions to Dismiss, the Court must determine whether Plaintiffs have alleged facts, that if proven, would entitle them to relief.

Plaintiffs' allegations of defamation fail as a matter of law. First, many of the allegedly defamatory statements are about Dr. Roy, not any of the named Plaintiffs. Second, although Plaintiffs vaguely allege that the statements are "false," Plaintiffs fail to specifically indicate how or why the statements are false, and allege no facts to support their blunt allegations. Third, Plaintiffs rely on many of the purportedly defamatory statements as facts in their Amended Complaints, thereby implicitly conceding the truth of the statements. For instance, Plaintiffs allege that Dr. Roy is the head of SIST. Statements regarding Dr. Roy's religious practices or the affiliation of his religious groups are also alleged in the Amended Complaint, which refers to "members" of Dr. Roy's group and the criticism it receives from "mainstream church leaders." Fourth, other statements regarding SIST's outstanding debts are based on

9

public record and thus Plaintiffs cannot demonstrate that Defendants published such statements with actual knowledge that the statements were false. Fifth, the Amended Complaints are void of any facts whatsoever that pertain to the harm allegedly suffered by Plaintiffs as a result of the purported defamation. Although the Amended Complaints plainly aver that Plaintiffs' reputations were harmed, there are no allegations or facts that indicate in what way or to the extent that Plaintiffs' reputations were harmed. Finally, although Plaintiffs baldly allege that Defendants acted with reckless disregard for the truth, the Amended Complaints fail to allege any specifics relating to such reckless disregard or actual malice. Indeed, there are no facts alleged to support a claim that Defendants knew or should have known that any of the allegedly defamatory statements were false.[4] Accordingly, Plaintiffs' defamation claims against all Defendants fail.

      3.    <u>Tortious Interference with Business Expectancy</u>

Plaintiffs contend that the statements made and published by Defendants constitute tortious interference with business expectancy. A plaintiff must allege that the defendant intentionally committed a wrongful act that improperly interfered with a prospective relationship. See <u>United Wild Rice, Inc. v. Nelson</u>, 313 N.W.2d 628, 633 (Minn. 1981). "The mere loss of unspecified business does not establish the tort of intentional interference with

---

[4] Moreover, Defendants contend that Plaintiffs are only entitled to special damages under Minn. Stat. § 548.06. This statute limits a plaintiff's recovery to special damages, unless the plaintiff has demanded a retraction which has been refused. Plaintiffs do not allege that they demanded a retraction or that any of Defendants refused such a retraction. Regardless, Minnesota law requires a plaintiff to plead special damages in the complaint, and the Amended Complaints clearly fail to allege special damages in this case.

prospective business relationship under Minnesota law. Rather, wrongful interference with prospective relations requires intentional conduct affecting specific relationships." D.B. Indy, LLC v. Talisman Brookdale, LLC, File No. 04-1023, 2004 WL 1630976, *4-5 (D. Minn. July 20, 2004) (Magnuson, J.) (quoting H. Enter. Int'l, Inc. v. Gen. Elec. Capital Corp., 833 F. Supp. 1405, 1417 (D. Minn. 1993) (Doty, J.)). Plaintiffs generally aver an interference with unspecified consumers. "Under Minnesota law, the loss of possible unspecified customers does not establish the tort of intentional interference with prospective economic relations." Id. (quoting Int'l Travel Arrangers v. NWA, Inc., 991 F.2d 1389, 1405 (8th Cir. 1993)). Furthermore, Minnesota law suggests that when a defamation claim cannot stand, a claim for tortious interference with business expectancy must also fail. See Glenn v. Daddy Rocks, Inc., 171 F. Supp. 2d 943, 949 (D. Minn. 2001) (Doty, J.). Thus, because Plaintiffs' defamation claims fail, Plaintiffs' tortious interference claims fail as well. Defendants' Motions on this point are granted.

    4.  <u>Intrusion Upon Seclusion and Publication of Private Facts</u>

Plaintiff Naomi Isaacson claims that Defendant Pioneer Press intruded upon her seclusion and published private facts in violation of Minnesota law. The Amended Complaint asserts that the Pioneer Press published information that Isaacson worked for a Hennepin County Judge, that she lived in Minneapolis, and that she signed a mortgage agreement with Anoka County.[5] Invasion of privacy claims require the subject matter of the claim to be

---

[5] As a threshold matter, the Court notes the probability that it lacks diversity jurisdiction over this state-law claim. Ms. Isaacson is a Minnesota resident and Northwest Publications

private.  See Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231, 233 (Minn. 1998).  As the Pioneer Press points out, this information is of public record and therefore cannot sustain a claim for invasion of privacy.  Accordingly, Plaintiff Isaacson's claims fails.

**CONCLUSION**

Plaintiffs' claims against all Defendants fail as a matter of law.  Plaintiffs fail to allege sufficient facts to sustain the claims in their Amended Complaints.  Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant Star Tribune's Motion to Dismiss (Civil File No. 05-0735, Clerk Doc. No. 2) is **GRANTED**;

2. Defendant Pioneer Press's Motion to Dismiss (Civil File No. 05-0736, Clerk Doc. No. 3) is **GRANTED**;

3. Defendant KSTP-TV's Motion to Dismiss (Civil File No. 05-0737, Clerk Doc. No. 4) is **GRANTED**;

4. Defendant Duluth News Tribune's Motion to Dismiss (Civil File No. 05-0743, Clerk Doc. No. 4) is **GRANTED**;

5. The Amended Complaints in Civil File Nos. 05-0735, 05-0736, 05-0737 and 05-0743 are **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 15, 2005

s/ Paul A. Magnuson  
Paul A. Magnuson  
United States District Court Judge

---

and the Pioneer Press are Minnesota entities.